IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PAUL CASILLAS-SANCHEZ, *et al.*,<br><br>**Plaintiffs**,<br><br>v.<br><br>RYDER MEMORIAL HOSPITAL, INC., *et al.*,<br><br>**Defendants**. | **Civil No.** 11-2092 (FAB-BJM) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

At the close of plaintiffs' evidence at trial, defendants Dr. Edgar A. Cardona, his legal partnership, SIMED as his insurer, and Hospital Ryder Memorial, Inc. (collectively, "defendants") argued a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  (Docket No. 107.)  The Court granted the motion only in part, denying the motion as to defendants' medical malpractice argument.  (Docket Nos. 107 & 110.)  Defendants renewed their motion before the case was submitted to the jury.  (Docket No. 113.)  The Court denied the motion, id., and the jury returned a verdict for plaintiffs on August 27, 2013.  (Docket No. 119.)  Finding that defendant Dr. Edgar Cardona-Traverzo was negligent in the laceration of Mrs. Rosa Sanchez ("Mrs. Sanchez")'s right portal vein, the jury awarded plaintiffs $79,000.00 in damages.  Id.  On September 26, 2013, defendants

renewed their motion for judgment as a matter of law pursuant to Rule 50(b), (Docket No. 129), but the Court denied the motion for failure to spell out and support their arguments properly. (Docket No. 138.) The Court permitted defendants to re-file by April 14, 2014, however, (Docket No. 142), and defendants' second joint motion is now before the Court. For the reasons discussed below, the Court **DENIES** defendants' second motion for judgment as a matter of law.

### I. Legal Standards

Defendants base their Rule 50(b) motion on plaintiffs' alleged failure to prove the medical malpractice claim pursuant to article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141–42. To succeed on that claim, plaintiffs bear the burden of establishing, by a preponderance of the evidence: (1) the duty owed by Dr. Cardona to Mrs. Sanchez, (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between Dr. Cardona's breach and the harm suffered by Mrs. Sanchez. See Rivera v. Turabo Med. Ctr. P'ship., 415 F.3d 162, 167 (1st Cir. 2005). Defendants aver that plaintiffs failed to establish the first element of the article 1802 claim because their expert, Dr. Tomas Torres-Delgado, did not testify as to the proper standard of care that applied to Dr. Cardona's treatment of Mrs. Sanchez. (Docket No. 147.)

Civil No. 11-2092 (FAB-BJM)                                            3

Puerto Rico law holds physicians in malpractice cases to a national standard of care. Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184 (1st Cir. 1997) (internal citations omitted). A physician's duty is to provide patients with medical care "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession." Santiago-Otero v. Mendez, 135 P. R. Dec. 540, 1994 P.R.-Eng. 909, 224 (1994); Rolon-Alvarado v. San Juan, 1 F.3d 74, 77-78 (1st Cir. 1993) (holding that a health care provider "has a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances") (citing Oliveros v. Abreu, 101 P.R. Dec. 209, 1 P.R. Offic. Trans. 293 (1973)). A treating physician enjoys a presumption that he or she possessed the reasonable knowledge and skills required by the controlling medical standards, and that he or she provided reasonable and adequate care to the patient. Del Valle-Rivera v. United States, 630 F. Supp. 750, 756 (D.P.R. 1986) (Fuste, J.). In order to overcome this presumption, a plaintiff ordinarily must provide expert testimony to outline the minimum acceptable standard of care and to conform the defendant doctor's failure to meet it. Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113 (1st Cir. 2010).

In establishing a physician's failure to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, an expert must show more than merely that another doctor would have chosen to treat the patient in a different manner.  "The mere fact that [an expert] might have selected a particular approach or method of treatment does not, without more, establish that a different approach or method, even if unsuccessful, fell short of the duty owed." Rolon-Alvarado, 1 F.3d at 78.  "Professional standards re[qu]ire normative judgments, not merely proof that a better way to treat a particular patient could have been devised." Id.

## II. Sufficiency of Plaintiffs' Evidence

Dr. Torres testified that Mrs. Sanchez's admission to Ryder on September 12, 2009 was due to "cholelithiasis, which means stones in the gallbladder, and choledocholithiasis, which means stones in the common bile duct." (Docket No. 147-1 at p. 38.)  He described the general human anatomy of the liver, hepatic ducts, cystic duct, gallbladder, common bile duct, hepatic artery, and portal vein, id. at pp. 40–44, and then explained that Mrs. Sanchez had a "friable liver," id. at p. 60, that her common bile duct was wider than the typical 0.8 centimeters, id. at p. 42, and that her gallbladder was "shrunken," "corrugated," "contracted," "fibrotic," and "inflamed." Id. at pp. 46; (Docket No. 147-3 at p. 26).  Because Dr. Cardona

did not describe the entrance or exit of Mrs. Sanchez's cystic duct in the operations report, Dr. Torres concluded that her cystic duct could not be identified and was "obliterated." (Docket No. 147-1 at pp. 47 & 49.) He also noted that Mrs. Sanchez's gallbladder "was extremely attached" to the common bile duct at the exit of the cystic duct. (Docket No. 147-1 at p. 67.)

Regarding Dr. Cardona's duty when removing stones from Mrs. Sanchez's gallbladder and common bile duct, Dr. Torres testified that "the standard of care requires you [ — the physician — ] to dissect that gallbladder, to open the cystic duct in which you already did a cholangiogram[1] and you know how many stones are there, remove the stone and remove the gallbladder." (Docket No. 147-1 at p. 68.)[2] Notably, Dr. Torres testified that

---

[1] According to Dr. Torres, an intraoperative cholangiogram is a procedure in which a physician first injects dye into a patient's common bile duct before taking x-rays in order to obtain a "complete view of all the biliary tract" and visibility of stones inside the patient's organs. (Docket No. 147-1 at pp. 48–49.) Dr. Torres explained that the cholangiogram allows the physician to see the left valve of the common bile duct, which is "very important because [then] you know that beyond that point is the hepatic artery and beyond [that] is the portal vein. And although the portal vein is not stained by the cholangiogram, it tells you[,] 'Don't go beyond this line because you are going to get into trouble.'" Id. at p. 50.

[2] The Court rejects the contention that Dr. Torres' repeated allusion to *primum non nocere*, or "first, do no harm," established a sufficient standard of medical care. (Docket No. 134 at p. 4.) That testimony relayed nothing more than every physician's Hypocratic Oath "which, as we all know, is the foundation of medical ethics," Ladner v. Higgins, Inc., 71 So. 2d 242, 244 (La. Ct. App. 1954), but is not, standing alone, an established standard of care for article 1802 purposes.

Civil No. 11-2092 (FAB-BJM)                                        6

Dr. Cardona <u>did not perform</u> an intraoperative cholangiogram for Mrs. Sanchez's operation.  <u>Id.</u> at p. 52.  Thus, Dr. Cardona did not have the cholangiogram to serve as a "guide" for his dissection, or to give him a picture of the common bile duct's left valve, the hepatic artery, or the portal vein's proximity to the cautery.  <u>See id.</u> at p. 50.

    Dr. Torres opined that "for one reason or another," Dr. Cardona performed the dissection close to or over Mrs. Sanchez's right portal vein, but that "there was no reason to be dissecting there."  (Docket No. 147-1 at p. 68.)  He confirmed Dr. Cardona's initial approach to the operation – to dissect[3] the gallbladder from the top — as a "good approach."  <u>Id.</u> at p. 68. If, in the dissection process, a physician enters into an area in which he or she "doubt[s] what's going on there," however, Dr. Torres advised that the physician should "stay away from there. Stop the dissection.  Go some other way."  <u>Id.</u> at pp. 68-69. Applied to a situation where a patient's gallbladder's extreme attachment to the common bile duct obscured the cystic duct, Dr. Torres implied that the correct course of action should have been for the physician to stop the dissection and take a different approach to removing the stones.  He then offered four "other ways" that a physician could have safely performed the removal of stones

---

    [3] Dr. Torres clarified that dissection involves "separating the structure," whereas laceration involves "cutting a structure." (Docket No. 147-1 at p. 51.)

Civil No. 11-2092 (FAB-BJM)                                          7

from the gallbladder and common bile duct where the cystic duct is obscured.  Id. at pp. 67-72.  Ultimately, Dr. Torres' opinion was that Dr. Cardona "had at least four ways to do that operation without doing any harm, and he decided to keep going."  (Docket No. 147-1 at p. 71.)

   Viewing Dr. Torres' testimony as a whole, the Court finds sufficient evidence of the proper standard of care for Dr. Cardona's treatment of Mrs. Sanchez.  Dr. Torres took the jury through a detailed explanation of the pertinent human anatomy and stated the typical standard of care or technique for a doctor to remove stones from the gallbladder and common bile duct "when there is no loss of visual perception."  (Docket No. 147-1 at p. 68.)  He explained that Dr. Cardona appropriately began the technique by dissecting the gallbladder.  By describing Mrs. Sanchez's "friable liver," "dilated" common bile duct, and "contracted, fibrotic and inflamed" gallbladder, however, Dr. Torres identified conditions that should have alerted a health care provider to possible complications in performing the stone removal operation.  Although Dr. Torres' testimony could have been clearer by explicitly stating that the standards of care he set forth were generally recognized by the medical profession in similar circumstances, the Court rejects defendants' argument that "plaintiffs failed to provide any kind of objective medical evidence from which the jury could conclude the standard of care to conduct this kind of surgery."

Civil No. 11-2092 (FAB-BJM)                                          8

(Docket No. 147 at p. 4.) The "extreme" attachment of Mrs. Sanchez's gallbladder and common bile duct, and thus the limited visibility of the cystic duct, should have alerted a physician with similar expertise to Dr. Cardona's to adjust his or her technique in order to avoid precisely what occurred in this case: dissecting into an area with limited visibility and unintentionally lacerating other body parts.[4] Dr. Torres, therefore, did more than merely claim that he would have chosen to treat the patient in a different manner than Dr. Cardona. He set forth a standard of knowledge and skill required in the removal of stones from a patient with Mrs. Sanchez's conditions. Accordingly, the Court finds that plaintiffs' expert testimony sufficiently outlines the minimum acceptable standard of care and conforms Dr. Cardona's failure to meet it. See Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113 (1st Cir. 2010).[5]

---

[4] Relying on the autopsy report, Dr. Torres testified that there were at least four lacerations in Mrs. Sanchez's liver: two in the right side, right lobe, one in the vesicular bed, and either one or two in the left lobe. (Docket No. 147-1 at pp. 63–64.)

[5] Defendants' further argument that Dr. Torres did not mention or produce "any single piece of specific medical literature in order to establish the alleged standard of care," (Docket No. 147 at p. 4), is utterly insignificant. Federal Rules of Evidence 705 and 703 do not require an expert to do so. Instead, Rules 705 and 703 "place[] the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel's cross-examination." United States v. Perocier, 269 F.R.D. 103, 109 (D.P.R. 2009) (McGiverin, Magistrate J.) (citing 4-705 Weinstein's Federal Evidence § 705.05 and Toucet v. Maritime Overseas Corp., 991 F.2d 5, 10 (1st Cir. 1993)).

Civil No. 11-2092 (FAB)                                                9

## III. Conclusion

Defendants' second joint motion for judgment as a matter of law, (Docket No. 147), is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 23, 2014.

                                              s/ Francisco A. Besosa
                                              FRANCISCO A. BESOSA
                                              UNITED STATES DISTRICT JUDGE